The next matter, number 171572, Jose Marcos Alvarado v. Jefferson B. Sessions. Thank you. Good morning, Mr. Cameron. Good morning, Your Honors. I'd like to request two minutes of rebuttal time, if possible. Please. Thank you. May it please the Court, I'm Matt Cameron on behalf of Petitioner Alvarado. Your Honors, we're here today with only one controlling case from this circuit, and that case is the unblocked decision in 2007 of Castaneda Castillo. In that case, this Court wisely found that... Mr. Chairman, could you speak up just a little bit? Sure. Can you get up a little? In Castaneda Castillo, the Court wisely found that the statute that bars persecutors is a smooth surface beneath which lies a series of rocks. The Government is urging this Court to remain on the surface, and that has never been the intention of asylum or refugee law, and that is not our intention today. We are encouraging the Court to look beneath the surface, no matter how painful these rocks may be, because the Government's position, the position of the Board below, which directly contradicts this Court's previous position in the 2007 unblocked decision in Castaneda Castillo, as well as the Fifth Circuit's decision on which the Board primarily relies in reaching its result, this entire line of evidence... Isn't there a major difference between those two cases? Between which? Between Castaneda and this case. In Castaneda, the officer that was in charge of the blocking squad was not aware of what was taking place in the town where the massacres took place. But in this case, your client was aware that these activities were taking place. Correct, and the Court's primary holding in Castaneda was about knowledge and lack of knowledge. But this Court made some very important findings regarding the nature of what it means to assist in persecution, which I think are very important and should advise the decision today, because the Court was very clear that contemporaneous knowledge alone is not enough. And that's what we're talking about here. The Government is arguing that as long as this man was in the room, or in this case he was actually outside the door, as was the petitioner in a case like Wang in the Second Circuit, or Ng, where they're essentially at a peripheral. He's a peripheral player, he's just a people who are nearby. And the problem is that the hypothetical that this Court raised in Castaneda would come up again and again. The hypothetical bus driver who unwittingly drives someone to the scene of a massacre, not understanding, not knowing of course how we know, that there's someone on the bus intent to massacre a number of people at his stop. Certainly no moral, legal universe would allow us to hold that bus driver accountable for the man's actions, just because he was a public transit driver. Yeah, but he would not have knowledge. As I understand your hypothetical, did you say that he didn't have knowledge of what was going on? He would have contemporaneous knowledge when the event begins. But again, the Government's rule would essentially be as long as you walk into a room and something terrible is happening, you're suddenly now, you have contemporaneous knowledge of that, and your intent, your motive, your moral culpability is irrelevant. And I think that that is really, it flies in the face of everything we know about asylum law. I thought in this case he, I may be wrong, but help me, I thought the record shows that not only was he aware of what was going on, but it happened more than one occasion. The record that we seem to agree on in this case, and this is, to be fair, this is confusing, my client suffers from severe PTSD and has given a number of accounts over the years, but the record that we seem to agree on in both briefs is that he witnessed one occasion in which he brought a guerrilla soldier to be questioned, to interrogation, which again is normal active, it was normal part of his military service during wartime in the way that Rodriguez-Majano would contemplate, brought him to a normal military interrogation, not understanding or not knowing at the time that torture was being used in these interrogations, witnessed an act of torture as he was standing outside the door. His only instruction, though, from the superior was to stand outside the door and establish a security perimeter. What was the actual finding that the I.J. made about the number of instances in which he brought individuals for interrogation? The I.J. made it clear it was somewhat unclear, but we did narrow it down to this one. That is, what is on appeal, that is, as I read the government statement of facts, that seems to be what the government agrees as well, and that's why this case is so important as trying to understand the limits of this kind of a thing, because this is not someone who was repeatedly exposed to this kind of a thing, who understood that this was a regular part of his job or what was happening during this war. Where does the reference to five times actually brought somebody in for interrogation and then stood guard, where does that come from? That was the initial interview, I think, with an asylum officer, and I think there was some confusion about whether those five times actually involved torture or whether there were five acts of bringing someone in for interrogation. This was 38 years ago. My client has severe memory problems and PTSD and has had a lot of issues with that, but the fact is that my client detested that the majority of his service was simply guarding military installations, communications for the most part, very routine service, and he was a cadet essentially with no command power, which I think is also relevant here. And I just want to make it clear that this court sides with the majority of federal circuits in finding that there has to be some illicit motivation, that there has to be something more than simply contemporaneous knowledge, as there should be. In any understanding of trying to assess wrongdoing, we have to look at something beyond simply being in the room. We have to know, what did you know coming in? What was your understanding of what was going to happen? What were you prepared to do? And my client was prepared to bring someone in for questioning, which is a routine part of military service, and he was prepared to stand outside the door. And it is clouded a little bit by the problem that the immigration judge didn't specifically find that he had assisted in persecution. She found that there was a possibility that he had assisted in what she called illicit acts, but she found ultimately that what happened didn't amount to persecution under her analysis of it. So this record is clouded somewhat by that, but I want to be clear that the Fifth Circuit and the Seventh Circuit, which are the only circuits to find this kind of strict liability analysis under Baugh and Singh, are the minority here. This court remains a majority with Castaneda-Castillo, and I understand Justice Jarrett's point. I thought the way the parties have framed the issue for us, the issue is whether in order to – illicit motivation is the issue before us, and whether in order to apply the persecutory bar there has to be a showing of illicit motivation. You're referring to sort of other factual, some factual disputes, perhaps other grounds for decision, but as you reframe the issue, that is the issue you want us to decide, is that correct? That is absolutely where we're here, yes, is because the government is arguing that that kind of illicit motivation should not be considered, and we want to be sure that this court continues to sign with the majority of circuits which find that it has, that it is necessary. Because, just again, in the matter, in just the basic interest of justice, certainly for the consideration of asylum cases, we cannot have a hard rule like this. We can't stay at the surface level for every one of these cases. The outcome for everyone would be very bad. So how do you respond to the government's argument that that approach invites arguments, which on their face are very troubling, the argument that I did this only because I needed the money, I wasn't trying to persecute anyone, or I was only following orders, which has some terrible resonances. I mean, how do you respond to their concern that it's exactly that kind of evasion of the person to rebar that you're inviting with your argument? Well, that seems to discount the immigration judge's role in determining credibility in proceedings and deciding what the person in front of them is saying. And I think that establishing a hard rule like this is going to have some very hard results, including someone like Mr. Alvarado, who the record reflects was present for one act, which he contemporaneously witnessed. And we need to be careful about the outer edges of what this could lead to. I want to be sure that the immigration judge has that opportunity to actually assess credibility individually instead of having to bar people in all of these cases. This remains a very active and open question. And I would just note that the BIA's new rule... I think your time is up. I'll let you use your two minutes. I'm sorry, that wasn't my eight minutes. Thank you. Mr. Stone, good morning. Good morning. I may please the court. My name is Paul Stone. I represent the respondent, Attorney General of the United States. We agree that the issue for decision is whether to be barred under the persecutor or others bar. Applicants must not only know that their actions assist in persecution, may assist in persecution, but they must also share the intent of the persecutors to harm the victim on account of a protected ground. That's the Fifth Circuit view. That's the Fifth Circuit view, and that's the Board's view as well, Your Honor. Looking at the plain language, the dispute is straightforward. Whether the prepositional phrase, because of the individual's political opinion, modifies the verb assisted, which comes right before it, or jumps over that verb to modify the noun, the persecution. The Board held the issue as answered by the plain language of the persecutor bar, because of, because of preposition, immediately follows the noun, the persecution, rather than jumping over that term and modifying the verb assisted. Now, opposing counsel has raised a number of issues about culpability. Knowledge does establish culpability, and the Board followed this court's decision in Castaneda that, if an alien needs to have prior or contemporaneous knowledge, that their actions may assist in persecution in this case. And it also followed in a later published decision in a matter of DR2 and established a national standard adopting this court's approach to establishing culpability through knowledge. The question that's raised here today is whether there needs to be, the language of the statute requires there to be an additional level of culpability, that is, the alien assisting needs to also intend to assist in order to persecute the victim. And that's just not the case by the plain language. The plain language requires only that the person actually assist it. As Judge Lipas asked, that raises a number of troubling questions, which is, an alien can assist in horrific acts, and so long as it was in the line of their employment, or they were following orders, or there was some reason to do it other than the fact of the person's political view or social group or religion, they bear no responsibility. And there's nothing in the plain language of this statute that suggests such a glaring exception exists. Supposing the example I think was raised, somebody drives a prisoner to the place where they do the interrogation, drops him off, and thereafter the people that are interrogating the prisoner engage in torture. Is that assisting? That would be assisting, but there would be no knowledge. But that's not what the statute says. If you read the statute the way I think it is read literally, assisting means assisting, any kind of assisting. Yes, and it would be assisting, Your Honor, under the statute. But the person, the driver, it sounds to me like from your hypothetical, the driver would not have prior contemporaneous knowledge that their assistance may help in persecution. Now, if that driver was told to take a suspect to be interrogated by people who are known to torture the people they're interrogating and then still drive them there, that would be assisting along with the scienter of knowledge, along with knowledge, along with scienter, which would make them then liable under the persecutive others part. But somebody who just drives someone, not knowing why, drops them off, leaves, finds out later that they were persecuted following this court's decision in Castroneta, as well as the board's decision in Alvarado and in DR2, that person wouldn't be liable. Supposedly the interrogators don't torture everyone that they interrogate. Well, that's something that Castroneta also contemplated. It said that there may be some level of knowledge less than absolute knowledge that the persecution will take place. Well, what I'm thinking of is rather vague. Just driving somebody there, then after the torture takes place, it doesn't take place every time. Does that make it an assistance? I think it would, because they are known that they may be assisting in persecution, which is the language the board adopted in DR2. There's also Fourth Circuit case Quintanilla, where the alien was a sergeant who would arrest people and drop them off for interrogation. He claimed to not know that they would be interrogated. But the immigration judge found, based on country condition evidence, that he should have known. So he didn't have absolute knowledge that what he was doing would cause people to be tortured, but he really should have known. Other courts have found that it's not an absolute requirement. This court in Castroneta said that some lower level of knowledge may be acceptable, a level of reckless disregard or something like that. But the government hadn't suggested in that case, so the court didn't pass on what the scope of that would be. Yes, thank you. If you look at the face of the statute, the persecutory bar, it says nothing about knowledge. It also says nothing about the concept of voluntariness, whether somebody is coerced into assisting. Does that mean that they would be disqualified from forms of relief because of the persecutory bar? But because of a view that moral culpability is relevant in applying the persecutory bar, we will consider, as we did in Castroneta, knowledge. I think other circuits have said that voluntariness is relevant if somebody is coerced into assisting. We're not going to apply the persecutory bar. So why should we draw the line at illicit motivation? I mean, illicit motivation is certainly highly relevant to the concept of moral culpability. So having already introduced considerations that are not apparent on the face of the statute, why should we stop with coercion or knowledge? Why shouldn't we include illicit motivation into the analysis so that we can have, and I might add, since we're asking IJs to address those issues on the totality of the circumstances, why not illicit motivation as well? Well, Your Honor, it's because the idea of voluntariness as well as knowledge falls under the first phrase in the statute, which is the assisting phrase, whether the alien ordered, incited, assisted, or otherwise participated. And the Supreme Court has found, as well as the Board has found, that that term, assisted, is ambiguous. So looking behind that, courts, this Court as well as the Board, have held that to assist in something you need to know that what you're doing will have this consequence or know that it may have a consequence. The Supreme Court has said that it can also be interpreted to mean the act has to be voluntary or it can't be under due duress. That issue is actually currently before the Board, deciding that on remand from the Supreme Court. The question of whether the alien also needs to have the intention of persecuting a person on account of a particular protected ground is actually controlled by the second phrase of the statute, which is the persecution of an individual because of an individual's protected ground, race, nationality, membership in a particular social group. And that language, while the term persecutor may be ambiguous, taking together the persecution of an individual because of, when you ask who is the person doing that persecution, it's not necessarily the alien. It may be the person the alien is assisting. That's because of the individual's race, religion, nationality, modifies that term before it, the persecution. It doesn't jump over that and modify the term assisted, the alien who assisted because of the individual's race, religion, nationality, or membership in a social group. It's the persecution of an individual because of the individual's race, religion, nationality. And this is what the board found, and this is when it followed Bob's reasoning. It's also in a generally accepted English usage that when you have a phrase modifying something, you put that phrase next to the term it's modifying in order to avoid ambiguity, which is exactly what Congress did here. It put the phrase next to the term that it intends to modify. And as we already discussed, that doesn't leave out ideas of moral culpability because the alien is still required to know, not just that they're taking actions that may help in something, but that may help in persecution. So the alien may know they're driving someone to be interrogated. That's not enough. They need to know that they are driving someone to be interrogated, and that interrogation may rise to the level of persecution because of that person's political beliefs. So knowledge is what resolves that, and that's what we're asking the immigration judges to determine in their factual findings. And very briefly, I'll say we don't believe that the knowledge issue is an issue here because he conceded it to the immigration judge. The immigration judge relied on that. The DHS relied on it in its brief to the board. The immigration judge relied on his concession that he had knowledge of the persecution. The immigration judge didn't make additional fact findings on that point because the immigration judge relied on it. DHS also relied on it in its brief to the board, and the board relied on it in finding that it was conceded. So there actually aren't thorough factual findings on that particular issue because it was waived and unexhausted, and the court shouldn't reach it. If the court finds that it was somehow exhausted or not waived, it would need to be remanded to the immigration judge and the board to make decisions in the first instance, but we absolutely don't think that's necessary here. And similar goes with the assisting issue, but I won't get into that because my time is up. Thank you very much. Just very briefly, Your Honors, as Justice Treloar bled with in the beginning here, the issue in Castaneda was not just knowledge but guilty knowledge. That was the actual expression used. We have to look at moral culpability. It is absurd to simply say that someone was in the room, was contemporaneously aware of something that happened. That is far too much. That would exclude most of the people, and I shouldn't say most, but quite a number of people who have already received Nicara. Well, Counselor, you are confusing me a little bit because, again, what I thought the question before us was the question of illicit motivation. Exactly. But now you seem to be talking, you're now raising questions about the degree of knowledge that he had and whether if it was only contemporaneous, that doesn't mean the requirements of Castaneda. So what actually are you arguing? What are you asking us to decide? Your opponent has said, as far as I took the knowledge issue on the basis of concessions, that's out of the case. That's not what we're supposed to focus on. So what is your position on that? But at the same time, what I just heard in the argument here was about culpability and about understanding, and that all has to go together. I just want to make the very clear point, as Castaneda did, that knowledge itself is not enough. That's all I'm trying to say. I agree with this Court that we have narrowed it down to whether illicit motivation and looking at the actual motivation of the person in question. We have to look at that, and we cannot discount it. It just works incredibly absurd results to have that happen. I just want to address very quickly, because of argument, the statutory drafting here, I don't see that as being dispositive in any way. I don't see that there's any reading of this, or certainly within the context of refugee and asylum law, in which Congress ever intended that someone essentially be guilty by association, that as long as they did something to assist someone who was acting in a prevented manner, that that would be enough. The entire point of refugee and asylum law is a case-by-case analysis of each person who comes before the adjudicator, and I think it's very important to do that. So, thank you again.